UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Muzaffer Ata,

    Petitioner,

v.

Debra Scutt, Warden,

    Respondent.
_____/

Case No. 08-13849

Honorable Nancy G. Edmunds

## ORDER AND OPINION DENYING PETITIONER MUZAFFER ATA's REQUEST FOR EQUITABLE TOLLING AND DISMISSING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS AS TIME-BARRED

**I.   Introduction and background**

On September 8, 2008, Petitioner Muzaffer Ata filed a petition for a writ of habeas corpus. (Dkt. 1.) Also on that day, Petitioner filed a motion for equitable tolling of the applicable one-year statute of limitations. (Dkt. 3.) In that motion, Petitioner acknowledged that, under normal circumstances, his claim would have expired on April 30, 2001. (*Id.*) Petitioner argued that he should have been entitled to equitable tolling of his petition because he had been hospitalized on numerous occasions for paranoid schizophrenia and other psychoses. (*Id.*)

The Court ordered Defendant to respond to the petition. (Dkt. 5.) On March 10, 2009, Defendant filed a motion for summary judgment. (Dkt. 8.) Five days later, the Court addressed both Petitioner's motion for equitable tolling and Defendant's motion for summary judgment. (Dkt. 10, Court's March 18 Order.) The Court noted that Petitioner was competent to stand trial in his underlying Michigan court case and was able to pursue

his rights on appeal. (Court's March 18 Order at 10.) The Court further noted that he failed to establish his burden that he was incompetent during the time period in which his statute of limitations was running. (*Id.*) The Court then addressed various other factors from which it found that Petitioner had not met his burden of establishing that he was entitled to equitable tolling because of his alleged mental illness. (*Id.*)

Petitioner appealed. (Dkt. 13.)

On November 28, 2011, the Sixth Circuit vacated the Court's finding and remanded the matter so that the Court could conduct an evidentiary hearing on the equitable tolling issue. *Ata v. Scutt*, 662 F.3d 736 (6th Cir. 2011). The Sixth Circuit found that Petitioner's allegations created enough of a question to entitle him to an evidentiary hearing on the tolling issue.

On December 5, 2013, the Court held Petitioner's evidentiary hearing. (Dkt. 43.)

## II. Discussion

### A. Guiding equitable tolling law

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA) applies to all habeas petitions filed after the Act's effective date and imposes a one-year limitations period for habeas corpus petitions. 28 U.S.C. 2244(d)(1).

A petitioner can equitably toll the limitations period if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Ata*, 662 F.3d at 741 (internal quotation marks and citations omitted). The Sixth Circuit has stated that district courts should apply equitable tolling "sparingly" and on a "case-by-case basis." *Id.* (citations omitted).

A petitioner asserting equitable tolling "bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata*, 662 F.3d at 741 (citation omitted).

"Mental incompetence or incapacity may provide a basis for equitable tolling." *Ata*, 662 F.3d at 741 (citation omitted). From the Sixth Circuit's remand in this case:

> To obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations. In short, a blanket assertion of mental incompetence is insufficient to toll the statute of limitations. Rather, a causal link between the mental condition and untimely filing is required.

*Id*. at 742 (citation omitted).

## B.  The Sixth Circuit's opinion

The Sixth Circuit held that Petitioner had set out facts and the causal connection necessary to be entitled to a hearing. *Ata*, 622 F.3d at 743. The Sixth Circuit reviewed the facts that it found to support its holding. *Id*. The Sixth Circuit pointed to Petitioner's allegation that he untimely filed his petition "because he had been hospitalized on numerous occasions for paranoid schizophrenia" and "because he has been and continues to be medicated by the [MDOC] for paranoid schizophrenia and other psychoses." *Id*. The court held that the fact that Petitioner alleged that his untimeliness was due to being hospitalized and medicated, combined with his affidavit that he did not understand the one-year limitation period, was sufficient for an evidentiary hearing. *Id*. The Sixth Circuit stated that "while certainly not elaborate, [Petitioner's] allegations are specific enough to assert a causal link between his mental incompetence and his untimely petition." *Id*. The court added a helpful footnote. After quoting that "ignorance of the law alone is not sufficient to warrant equitable tolling[,]" the court stated that "[i]t is not clear whether [Petitioner] is

3

explaining that he was merely ignorant of the law or whether his mental incapacity prevented him from being able to comprehend the substance or applicability of the law." *Id*. n. 7. The Sixth Circuit explained that "[a] hearing will permit the district court to explore this issue." *Id*.

The Sixth Circuit reviewed the record and found that Petitioner's medical records showed a long history of mental illness. *Ata*, 662 F.3d at 744. The medical records, the court found, supported Ata's allegation that his medical illness caused his untimeliness. *Id*. The court paused again in a footnote that is relevant here. The Sixth Circuit noted,

> We are mindful that the Supreme Court requires more than an "extraordinary circumstance" that "prevented timely filing" for a petitioner to be entitled to equitable tolling. It required petitioners to demonstrate diligent pursuit of their rights.
>
> Here, in the affidavit attached to his motion for equitable tolling, [Petitioner] stated that "I have made every attempt known to me and my reasoning and understanding to facilitate any appeals before any court and to diligently prepare my appeal. I have not forsook any opportunity to present my appeal." Thus, [Petitioner] has set forth the basis for his claim of reasonable diligence in filing his petition.

*Id*. at 745, n. 8. Given the records and the allegations, the Sixth Circuit held that the Court must conduct an evidentiary hearing to determine whether Petitioner is entitled to equitable tolling.

### C. Petitioner has not met his burden to show that he is entitled to equitable tolling

The Court finds that Petitioner has not met his burden to show that he is entitled to equitable tolling. Petitioner fails to show that he was mentally incompetent while the one-year limitations period was tolling. Petitioner also fails to show that any alleged mental

incompetence caused his seven-year delay in filing his petition. Petitioner finally fails to show that he diligently pursued his claim.

The Court makes this finding from the medical records that the parties have submitted as well as from the testimony during the evidentiary hearing.

### 1. Petitioner's factual showing

#### a. The medical records

The Court has reviewed the MDOC documents for the relevant time period, 2000 and beyond. (Dkt. 44, Records.) For the most part, the records are unremarkable. The records show that Petitioner has been one hundred percent medication compliant since at least 2000. (Records at 378.) In March, 2000, Petitioner began working in the corrections system. (*Id.* at 371.) The records show that Petitioner set weight loss goals during this period. (*Id.*) Petitioner was alert and oriented to person, time, and place. (*Id.*) A May 2, 2000 note indicates that Petitioner was very focused on his thoughts, and that his job was going well. (*Id.* at 377.) Summer 2000 records show that he missed one appointment, but show no other remarkable notes. (*Id.* at 376.) A June 2010 record shows that he was depressed, but that he did not note any bizarre behavior. (*Id.* at 369.) In the Fall of 2010, the records continue to show that Petitioner was doing well. (*Id.* at 374.) A note from September 12, 2000, shows that Petitioner requested literature about counting calories and fat grams to help him in his effort to lose weight. (*Id.*) The Fall records show that Petitioner continued to be medication compliant and alert and oriented times three. (*Id.*) Winter records of that year are also unremarkable. (*Id.* at 373.)

A March 16, 2001 record shows that Petitioner was stable and that he had been one hundred percent medication compliant for a year. (Records at 365.) That record also

shows that Petitioner had a goal to lose more weight. (*Id.*) And the record notes, on an "update of legal issues" section, that Petitioner had "[n]o possible appeals." (*Id.* at 366.) The March 15 record shows that Petitioner had been maintaining his work assignment at the facility. (*Id.* at 364.)

An August 29, 2001 record shows that Petitioner was one hundred percent medication compliant and that he had been maintaining perfect attendance at his work assignment. (Records at 358.) Fall records show nothing remarkable. (*Id.* at 354.) Petitioner was alert and oriented times three, continued his work assignment, and denied any disturbing symptoms. (*Id.*)

A December 14, 2001 record shows that Petitioner expressed displeasure about his life sentence. (Records at 353.) The record shows that he stated that he should have received a more lenient sentence because he was mentally ill. (*Id.*) The record further shows that Petitioner voiced anger that his attorney did not present the mental illness issue. (*Id.*)

A June 2002 note shows that Petitioner was still maintaining one hundred percent compliance with his medications and that he was stable. (Records at 336.) Petitioner also represented that he had no complaints of emotional instability. (*Id.*) The note shows that Petitioner was very concerned over a number of legal issues and documentation. (*Id.*) The note states that "efforts were [made] to gain a sentence reduction" and that Petitioner spent much emotional energy on the efforts and that he was seeking legal counsel appropriately. (*Id.*)

6

A December 2002 note shows that Petitioner discussed goals and activities, including church and classes. (Records at 351.) That note also shows that Petitioner expressed a desire to get a new lawyer to review his case. (*Id.*)

The Court has reviewed the other medical records; the Court will not set forth those records--they are not relevant to the issue here nor do they differ from the records that the Court has summarized.

### b. Hearing testimony

#### i. Petitioner's testimony

Petitioner, born in 1955, testified that he had been "incarcerated" in mental institutions eleven times between 1973 and 1992. (Tr. at 30.) Petitioner explained that he was institutionalized because of his schizophrenia. (*Id.* at 31.)

Petitioner acknowledged that he filed nothing in his case from 2000 to 2006. (Tr. at 38.) He stated that he did not file anything because he had no one to help him. (*Id.* at 38.) As a reason for not filing his habeas petition, he maintained that he did not know the difference between state appeals and a federal habeas petition. (*Id.* at 38.)

Plaintiff confirmed much of what the medical records showed. Plaintiff explained that he obtained a job in the Cotton facility kitchen, in food service, because he needed money to pay someone to do legal services for him. (Tr. at 39.) He stated he put his legal work to the side so he could earn the money necessary. (*Id.*) He worked in the kitchen until October or November, 2004. (*Id.* at 39.) He then explained that someone told him that, since he did not have a high school degree or GED, he had the right to have a legal writer help him on his case without payment. (*Id.*)

Petitioner testified that he began working with a legal writer in 2004 or 2005. (Tr. at 40.)

Petitioner stated that he began taking GED classes around February, 2005. (Tr. at 42.) He said that he passed four GED subjects in one attempt in 2006: language arts writing, language arts reading, language arts social studies, and language arts science. (*Id.*) He explained that he did not pass the math GED portion until July, 2009. (*Id.*)

Plaintiff maintained that he had a substantial learning disability in math reasoning and word comprehension. (Tr. at 43.) He explained that, when reading, he often had to go back and reread to retain what he had learned. (*Id.*) He agreed that he had difficulty thinking through legal issues and that he only had a "very basic" knowledge of the legal process. (*Id.* at 44.) He did admit that he had a better understanding of legal reasoning and the legal process 'now' than he had had before. (*Id.*)

Petitioner acknowledged that, since he had been in MDOC facilities, he had been receiving medication for his mental illness and that he had always been compliant in taking those medications. (Tr. at 45.) As for side effects, Petitioner stated that he experienced some lethargy and that he gained some weight. (*Id.* at 45-46.) He stated that he did not have any significant side effects from the medication. (*Id.* at 46.)

Petitioner agreed on examination that, during his time in correction facilities, he accomplished a lot. (Tr. at 47-48.) He acknowledged that he obtained a GED, engaged in fairly extensive religious studies. (*Id.* at 48.) Also during that time, he had "excellent work reports" and had perfect job attendance in August, 2001. (*Id.*) He maintained, at one point during his incarceration, when he was having problems with a roommate, he requested a transfer away from his roommate so that he would not have a problem. (*Id.*)

He acknowledged that he understood that fighting was not allowed in MDOC facilities. (Tr. at 48.)

Petitioner testified that while he was in jail he also learned that he had diabetes. (Tr. at 49.) He stated that he was able to pay close attention to his condition. (*Id.*)

Petitioner testified that he only had one misconduct while he was incarcerated. (Tr. at 50.)

### c. Petitioner's expert's testimony

Steven Miller, PhD, a forensic psychologist, testified on Petitioner's behalf. (Tr. at 52.) Miller stated that he conducted a standard clinical evaluation on Petitioner. (*Id.* at 54.) He explained that this evaluation involved a review of Petitioner's history and mental status. (*Id.*) Miller also administered tests that evaluated Petitioner's personality and verbal intelligence. (*Id.*) Miller stated that he additionally reviewed the MDOC medical records. (*Id.*) Miller agreed that Petitioner had been compliant with his mental health program. (*Id.* at 54-55.) Miller stated that Petitioner's mental illness was in remission. (*Id.* at 55.)

Miller testified that Petitioner has a history of being diagnosed with learning disability. (Tr. at 56.) Miller explained that Petitioner's learning disability was primarily in math, although the math disability interacted with his language disability as well. (*Id.*) Miller concluded that Petitioner's math learning disability affected his ability to reason through complex problems. (*Id.* at 57.) Miller stated that the math learning disability would "[a]bsolutely" have an effect on Petitioner's understanding of the statute of limitations. (*Id.* at 57-58.) He reasoned that Petitioner's dyscalculia caused petitioner to have problems with any type of procedure. (*Id.* at 58.) Miller also reasoned that Petitioner became quickly distracted and "[fell] apart" at times when he faced a complex problem. (*Id.*) Miller stated

that Petitioner suffered from circumstantiality, which he defined as becoming quickly distracted and discussing minutia that is irrelevant to discussions. (*Id.*)

Miller stated that Petitioner was not able to answer open-ended questions well and that he became confused quickly. (Tr. at 59-60.)

Miller stated that Petitioner's mental illness complicated the math learning disability and the math learning disability complicated Petition's ability to learn. (Tr. at 60.)

During Petitioner's mental evaluation, Miller stated that Petitioner tried to put forth a better picture of him than was actually the case. (Tr. at 62.)

During the hearing, Petitioner's counsel asked Miller's ultimate conclusion about whether a causal link existed between Petitioner's mental incompetence and his failure to timely file his habeas petition. Miller explained that the Petitioner's medications controlled his psychosis symptoms, but that the medications did not control Petitioner's ability to become mentally confused. (Tr. at 64.) Miller testified that Petitioner became mentally confused when he was challenged by novel situations. (*Id.*) Miller added that Petitioner's math learning disability complicated his problems with novel situations. (*Id.*) Miller also testified that Petitioner easily went off in tangents when he was talking, but also was easily restructured. (*Id.* at 65.) Miller pointed to Petitioner's responses to Miller's questionnaire as evidence of Petitioner's mental illness causing him confusion. (*Id.* at 66-67.) Miller stated that Petitioner's response to a birth and age question involved a longer than necessary response involving the world events that may have been occurring during his birth year. (*Id.*) Miller testified that Petitioner had difficulty with following directions that were not very precise or very rigid. (*Id.* at 67.)

Miller acknowledged that he only reviewed Petitioner's documents that he indicated, and that those documents did not include any from 2000 to 2001. (Tr. at 69-70.)

Miller further acknowledged that the 2002-2012 records reflected that Petitioner was "med" compliant during the entire time period and that Petitioner was consistently alert and oriented, meaning he understood person, place, and time. (Tr. at 70-71.)

When questioned whether Petitioner's attaining his GED demonstrated that Petitioner was capable of goal-oriented thinking, Miller stated that Petitioner's ability to achieve goals was dependent "entirely on the complexity" of the goal. (Tr. at 71.) Miller also acknowledged that Petitioner's reading and intelligence was in the high to average range. (Tr. at 72.)

Miller conceded that nothing in the record showed that Petitioner was deemed incompetent after he stood trial or while he was MDOC facilities. (*Id.* at 73.) Miller stated his belief that once Petitioner became competent to stand trial, Miller did not see anything in the record to suggest that Petitioner lost that competency. (*Id.* at 78.)

Miller agreed that the records showed that Petitioner was worried about his legal proceedings in 2002 and that that worry showed that Petitioner was able to appreciate his legal proceedings. (*Id.* at 75.)

Miller stated that "nothing" in the MDOC records supported his conclusion that Petitioner's mental illness caused his to miss the one-year limitations period. (Tr. at 78.)

### c. Petitioner's legal writers' testimony

Petitioner had three legal writers testify or submit affidavits on his behalf during the hearing.

11

Kevin Minley, a current prisoner in the MDOC, and a legal writer in the corrections system, testified. (Tr. at 5, 6.) Minley stated that, to secure a legal writer's services in the prison, a prisoner usually was mentally unstable, did not have a GED, or spoke a foreign language  (*Id.*)

Minley worked as a legal writer from 2004 until 2011.  (Tr. at 7.)

He stated that he met Petitioner in 2000, at a different correctional facility (Brooks), because they were both housed there.[1]  (*Id.* at 8.)  Minley explained that he did not see Petitioner again until 2006, when Petitioner was assigned a legal writer, who turned out to be Minley.  (*Id.* at 8, 10.)  At that time they were both at the Cotton Facility. (*Id.* at 8.)

Minley testified that he did all of the work on Petitioner's case.  (*Id.* at 11.)  When questioned about Petitioner's level of participation during their interactions, Minley stated that Petitioner was concerned about his case, but that his participation was minimal because "he qualified for the legal writer program because of his situation."  (*Id.* at 11-12.)

Minley stated that, during his meeting with Petitioner, that he explained Petitioner's statute of limitations problem to him.  (Tr. at 12. )  Minley said that Petitioner did not "understand" the limitations issue and that he often tried to explain the problem with Petitioner.  (*Id.*)  Minley added that Petitioner did not "have any understanding that [the limitations period] applied to him."  (*Id.* at 13.)    Minley added that Petitioner's participation

---

[1] At Brooks, Minley stated that he and Petitioner were of the same religious affiliation and that he always had contact with Petitioner. (Tr. at 17.) He explained that he was able to have in-depth conversations with Petitioner during those times. (*Id.*) At Brooks, Minley was never Petitioner's cell mate, nor was he with Petitioner on a continual basis. (*Id.* at 18.)

in his own case only amounted to him checking to see if Minley was doing the work. (*Id.* at 13-14.) Minley suspected that Petitioner did not read any of the filings that Minley prepared. (*Id.* at 13-14.) Minley stated that, in 2007, he stopped working on Petitioner's case because he was transferred to another facility. (*Id.* at 14.)

Minley stated that, between 2000 and 2006, Petitioner was a totally different person. (*Id.* at 16-17.) He explained that Petitioner had improved "tremendously," although Petitioner continued to struggle with understanding legal issues. (*Id.*)

Elmer Iron was another legal writer that assisted Petitioner. (Tr. at 23.) He stated that he has been a legal writer since 1984. (*Id.*) He began working on the case at the end of 2007 or the beginning of 2008. (*Id.*) Iron explained that Petitioner's habeas petition was very late. (*Id.* at 25.) He stated that he tried to explain Petitioner's statute of limitations problem and what a statute of limitations was, but Iron explained that "he couldn't understand what the limitations had to do with him." (*Id.*) He added that Petitioner "thought that he was right, and that he had been pursuing his case . . . with people helping him, but he didn't know anything about the limitations." (*Id.*)

Iron stated that he did not know Petitioner before he was assigned Petitioner's case. (Tr. at 26.) He corrected his response, though, by saying that he knew him through their shared religion. (*Id.* at 26-27.)

The Court has considered Hassan-Azzard Mohammed's affidavit. (Dkt. 1, Ex. 1, Mohammed Aff.) He was also a legal writer for Petitioner. (*Id.* ¶ 4.) He stated that he observed that he explained that Petitioner was filing his habeas petition after the one-year statute of limitations period had expired. (*Id.* ¶ 5.) He stated that he observed that Plaintiff was unable to comprehend the days of the week and was unable to realize the number of

weeks in a month and that he was significantly "time-challenged." (*Id.*) Mohammed observed that Petitioner was unable to comprehend any type of limitation--whether it be a time limitation, a page limitation, etc. (*Id.* ¶ 7.) He detailed his relationship with Petitioner. He explained that Petitioner was always late for legal writing meetings and had difficulty prioritizing events. (*Id.*) Mohammed added that he believed he felt that he was particularly capable of rendering an opinion as to Petitioner's mental capacity as he worked closely with Petitioner. (*Id.* at 8.)

### 2. Analysis

Petitioner has not met his evidentiary burden. He first fails to show that he was mentally incompetent during any of the time leading up to filing his habeas petition. The Court credits the medical records and Petitioner and Dr. Miller's testimony over the legal writers' testimony. He then fails to show that any alleged mental incompetence caused his delay.

The records show that Petitioner was one hundred percent medication compliant and that he did not have any significant symptoms. While that compliance does not mean that Petitioner was not incompetent, it does militate toward a finding of competence. *See Brown v. McKee*, 232 F.Supp.2d 761, 768 (E.D.Mich. 2002) (Rosen, J.) (citations omitted) (stating that "the fact that [the] petitioner has been receiving psychotropic medications 'would actually weigh more in favor of his being able to function than not.'"). The Court also looks to the substance of the records to find that Petitioner was not incompetent. As Defendant points out, Petitioner was able to set goals to lose weight, he requested literature to learn how to manage his weight, he worked a job, and had good attendance at that job, for years, and he expressed concern over his state case and how he had no more avenues to appeal

14

or ways to reduce his sentence. The records also show that he was oriented as to person, time, and place, a record that contradicts Mohammed's assertion that Petitioner had time limitations. The Court notes that Petitioner was also able to work towards, and eventually attain, his GED, and showed interest in learning more about religion.[2] Petitioner therefore has demonstrated the capacity for learning new subjects and working towards passing new subjects and subjects with which he initially had difficulty, i.e. math.

The Court finds that Dr. Miller's testimony also does not help Petitioner in his argument that he is mentally incompetent. Dr. Miller presents his opinion that Petitioner's math learning disability, when added to his mental illness, had an effect on Petitioner's understanding of the statute of limitations. Dr. Miller testified that Petitioner was not able concentrate when faced with complex problems and had problems with any types of procedure. But Dr. Miller also testified that Petitioner had difficulty following directions that were not very precise or very rigid. Dr. Miller therefore appears to have contradicted himself when stating Petitioner's ability to deal with novel situations, complex problems, or rigid procedures. Dr. Miller himself acknowledged that there was nothing in the record to show that Petitioner was mentally incompetent since before his legal proceedings in state court. And Miller also acknowledged that Petitioner had been worried about legal proceedings in 2002.

Given the medical records, the Court finds that Plaintiff has not met his burden to show that he was mentally incompetent during the relevant time period.

---

[2]The Court acknowledges that Petitioner's working towards his GED was outside of the one-year limitations period. But nothing in the record suggests that he did not have the ability or wherewithal to attain his GED between 2000 and 2001.

15

Nor has Plaintiff shown any causal link between his untimely habeas petition and any alleged mental incompetency, much for the reasons the Court has all ready discussed. The medical records show that Petitioner had the ability to follow and strive to attain goals. The records also show that Plaintiff was able to appreciate his legal predicament, for he discussed not having any avenues through which to appeal his state sentence. He therefore appreciated the legal issues and was able to understand the gravity of no longer having the ability to appeal. *See McKee*, 232 F.Supp.2d at 768 (finding that the petitioner, while on his psychotropic medications, did not warrant equitable tolling, when he was able to file his habeas petition in federal court and that he was therefore able to manage his legal affairs and act upon them while on his medications.). Petitioner also testified that he put aside pursuing his legal issues because he did not have any money to have someone help him. He therefore voluntarily did not pursue his habeas petition or find out if he was entitled to a legal writer. But not having legal assistance is not an extraordinary circumstance that warrants tolling. *See Holloway v. Jones*, 166 F.Supp.2d 1185, 189 (E.D.Mich. 2001) (Tarnow, J.) (citations omitted) ("Claims that a petitioner did not have professional legal assistance are not an extraordinary circumstance which would toll the statute of limitations.") Even if he had shown an alleged mental incompetency, he has not shown that that incompetency caused his tardy petition. Petitioner was able to timely arrive for work and the majority of his scheduled psychiatric appointments. Dr. Miller also testified that Petitioner was uncomfortable without a rigid structure. The Federal Rules provide such a rigid structure.

Given his failure to show causation, his petition must fail. *See Nowak v. Yukins*, 46 F.App'x 257, 259 (6th Cir. 2002) (citations omitted) ("The petitioner must make a threshold

16

showing of incompetence . . . and demonstrate that the alleged incompetence affected her ability to file a timely habeas petition."). *See also Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010) (stating that "mental illness does not toll a filing deadline *per se*[.]" And holding that, "in order to carry this burden, [the petitioner] must offer a 'particularized description of how her condition adversely affected her capacity to function generally or in the relationship to the pursuit of her rights.'") ("[I]n order to justify tolling of the AEDPA one-year statute of limitations due to mental illness, a habeas petitioner must demonstrate that her particular disability constituted an 'extraordinary circumstance' severely impairing her ability to comply with the filing deadline, despite her diligent efforts to do so.") (citations omitted).

The Court lastly notes that Petitioner did not diligently pursue his rights. There is no indication that he sought legal redress during the time period or that he attempted to seek legal redress during the time period and that he was unable to. The Court finds that, at best, Petitioner did not know about the habeas one-year limitations period, but not that he did not understand it. His unknowingness is not a reason to toll the statute of limitations.

### III. Conclusion

For the above-stated reasons, the Court finds that the AEDPA's statute of limitations bars Petitioner's habeas petition. The Court therefore dismisses the petition.

So ordered.

                                      s/Nancy G. Edmunds
                                      Nancy G. Edmunds
                                      United States District Judge

Dated: March 10, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 10, 2014, by electronic and/or ordinary mail.

                                           s/Johnetta M. Curry-Williams
                                           Case Manager
                                           Acting in the Absence of Carol A. Hemeyer